IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MATILDA JEAN RENFRO,
    Plaintiff,

vs.                                            Case No: 3:13cv38/MCR/EMT

ERIC K. SHINSEKI, SEC'Y OF
U.S. DEP'T OF VETERANS AFFAIRS, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, a non-prisoner proceeding pro se, initiated this action by filing a civil complaint under 28 U.S.C. §§ 1331, 1346 and Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 38, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) (doc. 1). She paid the filing fee.

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After careful consideration, the undersigned concludes that this case should be dismissed for lack of subject matter jurisdiction.

I.    BACKGROUND

In her Third Amended Complaint (doc. 21), the operative pleading, Plaintiff names eighteen (18) Defendants: (1) the United States Department of Veterans Affairs ("VA"), (2) Eric K. Shinseki, Secretary of the VA, (3) James R. Talton, Director of the Central Alabama Veterans Health Care System ("CAVHCS"), (4) Raul de le Vasco, Assistant Police Chief of the VA police at CAVHCS, (5) Alvin Blocton, Sergeant with the VA police at CAVHCS, (6) Daniel Flores, VA Administrator at Eglin VA Community Based Outreach Center, (7) Anthony L. Dawson, Director of the VA Gulf Coast Veterans Health Care System ("GCVHCS"), (8) Dr. Kelly Woods, with Chief Quality and Performance Management Services of the GCVHCS, (9) Maria R. Andrews, Director of the Tuscaloosa VA Medical Center, (10) Charles E. Sepich, Director for the VA Southeast Network,

(11) Dr. Gregory Jones, an OB/GYN doctor with the 96th Medical Group at Eglin Air Force Base, (12) Kenneth W. Humphries, HIPPA Officer with the 96th Medical Group at Eglin Air Force Base, (13) John E. Patrick, Director of the Portland VA Medical Center, (14) Barbara Hyduke, Administrator of the VA Office of Patient Care Services, (15) Dr. Ana Leurinda, a doctor with the Eglin VA Community Based Outreach Center, (16) Dr. Chimoy Mishra, a doctor with the Eglin VA Community Based Outreach Center, (17) Margaret M'Boya, a social worker with the VA GCVHCS, and (18) Laura Lawford, a certified registered nurse practitioner at Wiregrass Community Based Outreach Center (doc. 21 at 1–7).[1]

Plaintiff alleges that in 1998, she underwent gender reassignment surgery to reassign her gender to female (doc. 21 at 10). She alleges in 2002, she filed suit in the United States District Court for the Western District of Washington, Case No. C02-5440-RBL, against the United States, the VA, VA Puget Sound Health Care System, Portland Veterans Hospital, Dr. Gordon Starkebaum, and Dr. Bruce Graunke, alleging the VA was contracting out her medical care and refusing to provide "unrestricted access" to VA outpatient care (*see id.* at 10). *See* O'Dubhthaigh v. United States of America, et al., No. 3:2002-5440, Complaint (W.D. Wash. Aug. 30, 2002); *see also id.*, Order (W.D. Wash Nov. 10, 2011).[2] The parties entered into a written settlement agreement ("Settlement Agreement") wherein the VA agreed to reinstate Plaintiff's medical care. *See id.*, Stipulation and Order (W.D. Wash. Mar. 7, 2003); *see also id.*, Order (W.D. Wash. Nov. 10, 2011). Not as part of the original lawsuit, but in order to resolve Plaintiff's concerns raised in settlement negotiations that her medical records did not accurately reflect her gender, the VA agreed to the placement of a "crisis note" in her medical records stating:

---

[1] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system.

[2] The undersigned takes judicial notice of information available on the database maintained by the Clerk of Court for the District Court for the Western District of Washington, viewed May 15, 2013, https://ecf.wawd.uscourts.gov/. *See* Fed. R. Evid. 201; United States v. Berrojo, 628 F.3d 368, 369 (5th Cir. 1980) ("The doctrine of judicial notice permits a judge to consider a generally accepted or readily verified fact as proved without requiring evidence to establish it."); *see also* Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (district court permissibly looked to docket sheets in ruling on motion to dismiss because "docket sheets are public records of which the court could take judicial notice"); In re Salem, 465 F.3d 767, 771 (7th Cir. 2006) (taking judicial notice of state court dockets and opinions); Dawson v. Mahoney, 451 F.3d 550, 551 (9th Cir. 2006) (taking judicial notice of state court orders and proceedings); United States v. Mercado, 412 F.3d 243, 247–48 (1st Cir. 2005) (taking judicial notice of state court docket entries).

> Veteran shall be described as female in all written and verbal communications. She is medically and legally a hypogonadal female. All notes should be consistent with this. For questions, contact Bruce Graunke, Ph.D 63843 or Gordon Starkebaum, M.D., Chief of Staff.

*See id.*, Order (W.D. Wash. Nov. 10, 2011). The Settlement and Stipulated Dismissal was entered into by the parties on February 24, 2003, and an Order of Settlement and Dismissal was filed March 7, 2003. *See id.*, Stipulation and Order of Settlement and Dismissal (W.D. Wash. Mar. 7, 2003).

On May 10, 2011, Plaintiff filed a Motion for Contempt and Injunctive Relief in the Western District of Washington (Case No. 3:2002-cv-5440), alleging employees of the VA were failing to comply with the provisions of the Settlement Agreement which she alleged required: (1) closing of her old, paper medical records and, beginning January of 2003, opening of a new medical record file, (2) review of her "patient care agreement" by the Coordinated Care Review Board after May of 2003, (3) Dr. Graunke's serving as her point of contact for concerns arising out of the Settlement Agreement; and (4) placement of the above-described "crisis note" in her computer medical records. *See* Duffy f/k/a/ O'Dubhthaigh v. United States of America, et al., No. 3:2002-cv-5440, Motion for Contempt and Injunctive Relief (W.D. Wash. May 10, 2011). Plaintiff also alleged that CAVHCS and the outpatient clinic at Eglin Air Force Base refused to follow the terms of the Settlement Agreement. *Id.*

On November 10, 2011, the district court for the Western District of Washington determined that Plaintiff's claims of violations of the Settlement Agreement, and her attempt to enforce it, amounted to a contract dispute. *See* Duffy f/k/a/ O'Dubhthaigh v. United States of America, et al., No. 3:2002-cv-5440, Order (W.D. Wash. Nov. 10, 2011). The court concluded that the Tucker Act, 28 U.S.C. § 1491, did not authorize equitable relief, and Plaintiff was not entitled to monetary damages. *Id.* Therefore, her attempts to enforce the Settlement Agreement failed as a matter of law, and Defendants were entitled to summary judgment. *Id.*

On November 17, 2011, just one week after the district court in Washington issued its decision in Case No. 3:2002-cv-5440, Plaintiff filed another complaint in that court under 28 U.S.C. § 1346, the Federal Tort Claims Act. *See* Duffy v. United States Department of Veteran Affairs, No. 3:2011-cv-5945-RBL, Complaint (W.D. Wash. Nov. 17, 2011). The court dismissed the case on April 24, 2012, on the ground that Plaintiff's claim was barred by res judicata, and she was

attempting to skirt the November 10, 2011, order in Case No. 3:2002-cv-5440 by recasting her unsuccessful attempts to enforce the Settlement Agreement as tort claims. *See id.*, Order (W.D. Wash. Apr. 24, 2012). The court stated, ". . . to allow her to do so would be a miscarriage of justice diverting judicial resources to re-examining these claims." *Id.*[3]

In the instant action, Plaintiff is again claiming violations of the Settlement Agreement, which allegedly occurred after the district court for the Western District of Washington issued its decision on November 10, 2011 (doc. 21 at 8–26). She alleges Defendants, as agents of the VA, delayed placing an electronic patient record flag in her medical records stating she is female, and failed to delete all notations in her medical records referring to her as anything but female (*id.*). She alleges Defendants are not providing her access to medical care as a female, including by failing to prescribe the level of estrogen Plaintiff believes she requires, failing to provide an MRI for a lump in her breast, and questioning her as to her gender and requiring her to verify it (*id.*). She alleges Defendants have not provided a "point of contact" to whom she may direct her grievances, as required by the Settlement Agreement, and that they either ignore her complaints or pass them off to another VA employee (*id.*). She alleges Defendants created a "hostile medical care environment" and have done nothing to address her constant complaints regarding their failure to honor the Settlement Agreement with regard to her medical records, and failure to provide her proper medical care as a female (*id.*). She alleges Defendants charged her with a disturbance at a CAVHCS clinic after she "called herself a nigger of the VA," and then placed a "Cat I" patient record flag in her

---

[3] The court further stated:

> Ms. Duffy demands recognition of a type that many take for granted on a day to day basis. This is brave in some ways, though her methods appear questionable at times. While every person who suffered a wrong has a right to their day in court, not every battle is properly fought here. The Court notes Ms. Duffy's evident pain and recognizes her frustration at feeling unable to live a run of the mill, affirmed-in-her-gender life. Under the law, however, there is as yet no remedy for what she seeks that the Court is aware of. Given this reality, her energy and resources might be better spent in an advocacy capacity working to create and change laws and society to ensure the recognition she seeks.

*Id.*

medical records labeling her disruptive, which caused her to be effectively banned from some VA medical facilities (*id.*).

Plaintiff claims that the above-described conduct not only violates the Settlement Agreement with the VA, but also violates her civil rights as follows: (1) her right to due process, (2) her right to equal protection, (3) he right to be safe and secure in her "records," (4) her right to be free from cruel and unusual punishment, (5) her "personal security rights," (6) her right to "personal liberty," (7) her "non natural rights of personhood, created by social contract," and (8) her right to petition for redress of grievances (doc. 21 at 27–30). As relief, she seeks (1) deletion of all electronic medical files currently in the VA system and creation of a new file, (2) deletion of all "Cat 1 & 2" electronic flags that label her disruptive, (3) treatment at a medical center of her choice, (4) employment with the VA, (5) relocation from Alabama at the VA's expense, (6) the VA's "cancellation" of all criminal charges against her, (7) assignment of a "female health provider," (8) access to an endocrinologist, (9) "no more lip service only actual compliance," and (10) a national point of contact for future violation(s) of the Settlement Agreement (*id.* at 29–30).

II.   JURISDICTIONAL ANALYSIS

A federal court is obliged to dismiss a case whenever it appears the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); <u>Bochese v. Town of Ponce Inlet</u>, 405 F.3d 964, 975 (11th Cir. 2005); <u>University of South Alabama v. American Tobacco Co.</u>, 168 F.3d 405, 410 (11th Cir. 1999) (once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue); <u>Lovern v. Edwards</u>, 190 F.3d 648, 654 (4th Cir. 1999). A court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings, and in fact, a federal court is obligated to inquire into subject matter jurisdiction sua sponte whenever it may be lacking. <u>Bochese</u>, 405 F.3d at 975 (quoting <u>University of South Alabama</u>, 168 F.3d at 410); <u>Miccosukee Tribe of Indians of Florida v. Kraus-Anderson Const. Co.</u>, 607 F.3d 1268, 1273 (11th Cir. 2010). A district court may address its lack of subject matter jurisdiction in two ways: the court may find insufficient allegations in the pleadings, viewing the alleged facts in the light most favorable to Plaintiff, similar to an evaluation pursuant to Rule 12(b)(6), or, after an evidentiary hearing, the court may weigh the evidence in determining whether the facts support the jurisdictional allegations. <u>Lovern</u>, 190 F.3d at 653 (citations omitted). The burden is on the party asserting

jurisdiction to demonstrate that jurisdiction in fact exists. *Id.* at 654 (citing Thomas v. Gaskill, 315 U.S. 442, 446, 62 S. Ct. 673, 86 L. Ed. 2d 951 (1942)).

Pursuant to 28 U.S.C. § 1331, district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Miccosukee Tribe of Indians of Florida, 607 F.3d at 1273 (citing 28 U.S.C. § 1331). However, the mere assertion of a federal claim or citation to a federal statute is not sufficient to obtain jurisdiction under 28 U.S.C. § 1331. "Federal jurisdiction requires that a party assert a *substantial* federal claim." Davis v. Pak, 856 F.2d 648, 650 (4th Cir. 1988) (citing Hagans v. Lavine, 415 U.S. 528, 536 (1976)) (emphasis added); *see also* Baker v. Carr, 369 U.S. 186 (1962) (if jurisdiction is based on a federal question, the plaintiff must show he has alleged a claim under federal law and that the claim is not frivolous). In Hagans, the Supreme Court noted: "Over the years this Court has repeatedly held that the federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit, wholly insubstantial, obviously frivolous, plainly insubstantial, or no longer open to discussion.'" 415 U.S. at 536–37 (citations omitted); McGinnis v. Ingram Equip., Co., 918 F.2d 1491, 1494 (11th Cir. 1990) (the test of federal jurisdiction is whether "the cause of action alleged is so patently without merit as to justify . . . the court's dismissal for want of jurisdiction") (citations omitted); Peterson v. Ramirez, 428 F. App'x 908, 909 (11th Cir. 2011) (unpublished) (citing McGinnis). While emphasizing that this insubstantiality threshold is a difficult one to meet, the Supreme Court concluded that the substantiality doctrine "remains the federal rule and needs no reexamination." Hagans, 415 U.S. at 538. A complaint is frivolous "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," *id.*, 490 U.S. at 327, or when the claims rely on factual allegations that are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 31 (1992).

With regard to Plaintiff's constitutional claims, this court also lacks jurisdiction to adjudicate claims concerning the VA's provision of Plaintiff's medical services and benefits. Claims concerning veterans' benefits are governed by 38 U.S.C. § 511. Section 511 is part of the Veterans' Judicial Review Act of 1988 ("VJRA"), which creates an exclusive review procedure for the resolution of veterans' disputes. Section 511 provides:

> (a) The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.
>
> (b) The second sentence of subsection(a) does not apply to—
>
> (1) matters subject to section 502 of this title;
>
> (2) matters covered by sections 1975 and 1984 of this title;
>
> (3) matters arising under chapter 37 of this title; and
>
> (4) matters covered by chapter 72 of this title.

38 U.S.C. § 511. Subsections (b)(1)–(3) are not applicable in this case because they pertain to judicial review of: (1) rules and regulations, (2) suits on government insurance policies, and (3) housing and small business loans. Subsection (b)(4) allows judicial review of final decisions of the VA Secretary, including constitutional claims, but only through a specialized review process that does not involve the federal district courts.

Courts have recognized that § 511 broadly divests district courts of jurisdiction over constitutional claims related to VA benefits, whether the claims challenge specific decisions that relate to benefits or VA procedures. *See* Hall v. U.S. Dep't Veterans' Affairs, 85 F.3d 532, 535 (11th Cir. 1996) (per curiam) (VJRA deprived district court of jurisdiction over veteran's constitutional challenge to VA regulation reducing his disability compensation during incarceration); *see also* Veterans for Common Sense v. Shinseki, 678 F.3d 1013, 1031 (9th Cir. 2012); Beamon v. Brown, 125 F.3d 965, 971 (6th Cir. 1997) ("[T]he VJRA explicitly granted comprehensive and exclusive jurisdiction to the CVA [Court of Veterans Affairs] and the Federal Circuit over claims seeking review of VA decisions that relate to benefits decisions under § 511(a). This jurisdiction includes constitutional issues. . . ."); Zuspann v. Brown, 60 F.3d 1156, 1159–60 (5th Cir. 1995) (veteran's claim that Secretary of VA and VA physician, among others, denied him adequate medical care in violation of the Rehabilitation Act and due process clause of the Fifth Amendment, was in reality an individualized challenge to the VA's decision to deny him benefits over which

district court lacked subject matter jurisdiction under the VJRA, which creates an exclusive review procedure by which veterans could resolve their disagreements with the VA); Hicks v. Veterans Admin., 961 F.2d 1367, 1369 (8th Cir. 1992) (Section 511 permits constitutional claims in the exclusive appellate review scheme set forth in the CVA; it includes all issues, even constitutional ones, necessary to a decision which affects the provision of benefits to veterans); Larrabee by Jones v. Derwinski, 968 F.2d 1497, 1501 (2d Cir. 1992) (Section 511 deprives district courts of jurisdiction over constitutional and statutory challenges to VA decisions); *see also, e.g.,* Hassan v. U.S. Dep't of Veterans Affairs, 137 F. App'x 418 (2d Cir. 2005) (unpublished) (district court was precluded from considering VA hospital patient's constitutional challenges to the VA's decision to expel him from the hospital; court was statutorily barred, under 38 U.S.C. § 511(a), from reviewing VA's benefits determinations, and patient's claims were essentially challenges to benefits determinations cloaked in constitutional terms); Cheves v. Dep't of Veterans Affairs, 277 F. Supp. 2d 1237, 1245–46 (M.D. Fla. 2002) (38 U.S.C. § 511 barred action based on VA's alleged due process violation in connection with its alleged failure to inform veteran of his right to appeal disability rating and denial of benefits, and VA's alleged equal protection violation in racially discriminating in its treatment and handling of veteran's disability claims).[4] Additionally, no Bivens

---

[4] *See also, e.g.,* Chandler v. Hill, No. 2:10cv1081-MEF, 2011 WL 3704073, at *2 (M.D. Ala. Aug. 3, 2011) (unpublished) (38 U.S.C. § 511 deprived district court of jurisdiction over plaintiff's claims against Veterans Service Center Manager and Director of Central Alabama Health Care System, alleging Defendants violated his First Amendment right to freedom of speech and to redress grievances, and subjected him to cruel and unusual punishment by posting sign implying that if a veteran questioned or became upset with his physician's treatment, the veteran may be escorted off the property and lose his health benefits), *Report and Recommendation Adopted by* 2011 WL 3703801 (M.D. Ala. Aug. 24, 2011); Braggs v. Dept. of Veterans Affairs, No. 09-0756-KD-M, 2010 WL 551325 at *4 (S.D. Ala. Feb. 10, 2010) (unpublished) (pursuant to 38 U.S.C. § 511, district court lacked jurisdiction over plaintiff's claim regarding VA's decision to award him disability benefits that did not include retroactive benefits, despite plaintiff's "attempt[ ] to side-step the statutory review process for veterans' benefits by claiming racial discrimination and asserting other bases for his claim, [including the] Civil Rights Act and [the] American with Disabilities Act."); Bell v. Hill, No. 1:08cv488, 2008 WL 4877862, at *2 (M.D. Ala. Nov. 12, 2008) (unpublished) (pursuant to 38 U.S.C. § 511, district court lacked jurisdiction over plaintiff/veteran's lawsuit against veteran's service center manager for denying veterans benefits, despite plaintiff's allegation that conduct was motivated by racial discrimination); Slater v. U.S. Dep't of Veteran Affairs, No. 6:08-cv-160-ORL-22GJK, 2008 WL 977225, at *6 (M.D. Fla. Apr. 9, 2008) (unpublished) (pursuant to 38 U.S.C. § 511, district court lacked jurisdiction over plaintiff's claim alleging VA wrongfully denied him access to his disability benefits check in violation of due process under Fourteenth Amendment); Lee v. United States, No. 2:06cv368, 2007 WL 564179, at *1 (M.D. Ala. Feb. 20, 2007) (unpublished) (pursuant 38 U.S.C. § 511, district court lacked jurisdiction over plaintiff's claim for damages based upon VA clinic's decision to bar him from hospital, because decision constituted denial of medical and hospital benefits, despite plaintiff's couching his claim in terms of constitutional or tort law claim).

Case No. 3:13cv38/MCR/EMT

remedy lies against individual employees of the VA related to their provision of veterans medical benefits. *See* Zuspann, 60 F.3d at 1161; Hicks v. Small, 69 F.3d 967, 969 (9th Cir. 1995) (comprehensive, remedial structure of VJRA precluded Bivens claim asserted by veteran against VA doctor who allegedly reduced veteran's benefits in retaliation for his complaints concerning treatment); Sugrue v. Derwinski, 26 F.3d 8, 12–13 (2d Cir. 1994); Cheves, 277 F. Supp. 2d at 1246.

Here, Plaintiff challenges notations and "flags" entered by VA medical personnel in her medical records, their failure to provide "female" medical services, their comments and conduct during medical visits, and their failure to provide an effective means for processing her complaints about her medical records and medical services. Although Plaintiff couches her claims in terms of constitutional violations, she essentially challenges the manner in which VA employees are providing, or failing to provide, VA medical services. Therefore, her claims fall under the purview of 38 U.S.C. § 511. As such, rather than filing an action in this federal district court, Plaintiff should follow the grievance procedure Congress created through the VJRA.

Additionally, Plaintiff failed to demonstrate this court has jurisdiction over her breach of contract claims against the VA.[5] Settlement agreements reached with federal agencies are considered government contracts for purposes of jurisdictional analyses. *See* Shaffer v. Veneman, 325 F.3d 370, 372 (D.C. Cir. 2003). In order to establish this court's jurisdiction over a dispute involving a settlement agreement to which the government is a party, a plaintiff must show: (1) the court has subject matter jurisdiction over the issues raised by the dispute; (2) the United States has waived sovereign immunity for suits of that kind; and (3) the United States has consented to be sued in that particular court.[6] *See* Wright v. Foreign Serv. Grievance Bd., 503 F. Supp. 2d 163, 178 (D.D.C. 2007) (citations omitted).

The Tucker Act and the Little Tucker Act, 28 U.S.C. §§ 1491(a)(1) and 1346(a)(2), respectively, waive sovereign immunity for certain contract disputes against the United States. *See*

---

[5] The only Defendants in the instant lawsuit who were also parties to the Settlement Agreement are the VA and the Portland VA Medical Center.

[6] An action is one against the United States as a sovereign where the judgment sought is to be satisfied from monies of the federal Treasury, or where the judgment interferes with public administration, or where the judgment's effect is to compel or restrain the government's actions. Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550, 1555 (11th Cir. 1985) (citing Dugan v. Rank, 372 U.S. 609, 620, 83 S. Ct. 999, 10 L. Ed. 2d 15 (1963)).

United States v. Mitchell, 463 U.S. 206, 216, 103 S. Ct. 2961, 77 L. Ed. 2d 580 (1983) (Mitchell II). Subject to exceptions not relevant here, the Little Tucker Act provides that the district courts have original, concurrent jurisdiction, with the United States Court of Federal Claims, of a "civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States . . . ." 28 U.S.C. § 1346(a)(2). Its companion statute, the Tucker Act, § 1491(a)(1), assigns exclusive jurisdiction to the Court of Federal Claims for claims exceeding $10,000. *See* United States v. Bormes, — U.S. —, 133 S. Ct. 12 n.2, 184 L. Ed. 2d 317 (2012). The Little Tucker Act and the Tucker Act do not themselves "creat[e] substantive rights," but "are simply jurisdictional provisions that operate to waive sovereign immunity for claims premised on other sources of law." United States v. Navajo Nation, 556 U.S. 287, 290, 129 S. Ct. 1547, 173 L. Ed. 2d 429 (2009).

Courts have consistently construed the Tucker Act and the Little Tucker Act as "authorizing only actions for money judgments and not suits for equitable relief against the United States." Richardson v. Morris, 409 U.S. 464, 465, 93 S. Ct. 629, 34 L. Ed. 2d 647 (1973); *see also* Mastrolia v. United States, 91 Fed. Cl. 369, 381 (Fed. Cl. 2010); Northside Lumber Co., et al. v. Block, 753 F.2d 1482, 1485 (9th Cir. 1985); O'Connor v. Yezukevicz, 589 F.2d 16, 20 (1st Cir. 1978) (district court lacked jurisdiction pursuant to 28 U.S.C. § 1346(a)(2) over allegation of breach of contract where plaintiff requested injunctive relief). In Lee v. Thornton, 420 U.S. 139, 95 S. Ct. 853, 43 L. Ed. 2d 85 (1975), the Supreme Court held that § 1346(a)(2) "empowers district courts to award damages but not to grant injunctive or declaratory relief." *Id.*, 420 U.S. at 140. The prohibition against district court awards of equitable relief under § 1346(a)(2) stems from the fact that the jurisdiction of the district courts under the Act was made expressly concurrent with the Court of Claims' jurisdiction, and the Court of Claims has historically lacked power to grant equitable relief under § 1491(a)(1). *See* Richardson, 409 U.S. at 465–66.

Here, as the district court in Washington found in its November 10, 2011 order, the underlying complaint in Case No. 3:2002-cv-5440 was for injunctive relief, not monetary damages. *See* Duffy f/k/a/ O'Dubhthaigh v. United States of America, et al., No. 3:2002-cv-5440, Order (W.D.

Wash. Nov. 10, 2011). Indeed, Plaintiff titled her complaint, "Complaint for Injunctive Relief," and the entirety of her prayer for relief was the following:

> Injunctive relief sought to be stated at a future date, based upon the results of court required alternative relief effect, between the parties.

*See* Duffy f/k/a/ O'Dubhthaigh v. United States of America, et al., No. 3:2002-cv-5440, Complaint (W.D. Wash. Aug. 30, 2002). Further, as the Washington district court found, the Settlement Agreement resolved the issue of who would provide Plaintiff's medical care and the placement of the crisis note in her file; it did not provide monetary damages, nor could it be fairly interpreted as mandating compensation by the federal government. *See* Duffy f/k/a/ O'Dubhthaigh v. United States of America, et al., No. 3:2002-cv-5440, Order (W.D. Wash. Nov. 10, 2011). Therefore, she may not bring her breach of contract claim in the district court pursuant to the waiver of sovereign provided in the Little Tucker Act.

Additionally, if Plaintiff's breach of contract claim could be fairly interpreted as mandating compensation by the federal government in the event of a breach, *see* Holmes v. United States, 657 F.3d 1303, 1309, 1315 (Fed. Cir. 2011) (in a contract case, the money-mandating requirement for Tucker Act jurisdiction normally is satisfied by the presumption that money damages are available for breach of contract, with no further inquiry being necessary; although under certain circumstances, it is proper for the court to require a demonstration that the contract/agreement could fairly be interpreted as contemplating monetary damages in the event of breach), jurisdiction would lie exclusively with the Court of Federal Claims. In Plaintiff's prayer for relief, she requests, among other things, employment with the VA and relocation from Alabama at the VA's expense (doc. 21 at 29–30). Judicially noticing the federal minimum wage of $7.25 per hour, the VA's employing Plaintiff full-time for only nine (9) months would cost over $10,000.00. *See* La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) ("In analyzing the sufficiency of the complaint, [the Court] limit[s][its] consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed."). Add to that the VA's expense of relocating Plaintiff to another region of the country, and her claim well exceeds $10,000.00.[7]

---

[7] In Plaintiff's original complaint, she specifically sought "relocation cost to a new regional care facility to include cost of 19+ or minus [acres of] property with house and creek similar to my property at Samson Alabama" (doc. 1 at 6).

Therefore, if Plaintiff's breach of contract claim could be fairly interpreted as mandating compensation by the federal government in the event of a breach, exclusive jurisdiction of her claim would lie in the Court of Federal Claims.

Plaintiff has pleaded no other source for the United States' waiver of sovereign immunity for her breach of contract claim against the federal government. The court is aware that the Administrative Procedure Act ("APA") contains a limited waiver of sovereign immunity for suits challenging agency actions seeking "relief other than money damages." *See* 5 U.S.C. § 702. Section 702 provides:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702 (emphasis in original). The APA further provides, "Agency action reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

Here, as discussed *supra*, the VJRA limits district court review of the VA's conduct in this case, and provides judicial review only in the CVA, the Federal Circuit, and the Supreme Court. Therefore, Plaintiff may not proceed on her breach of contract claim under the waiver of sovereign immunity provided in the APA. *See* In re Russell, 155 F.3d 1012, 1013 (8th Cir. 1998) (rejecting argument that APA provided waiver of sovereign immunity to veterans' lawsuit challenging manner in which VA processes claims for benefits, and concluding United States has not waived its sovereign immunity as to review of VA procedures by any court other than the CVA, Federal Circuit, and Supreme Court); Beamon, 125 F.3d at 967–70, 974 (section 704 of APA waives

immunity only when the agency action is final and there is no other adequate remedy in a court; system of judicial review created by the VJRA provided an adequate alternate remedy).

III. CONCLUSION

The district court lacks subject matter jurisdiction over Plaintiff's constitutional claims, pursuant to 38 U.S.C. § 511. Additionally, Plaintiff failed to show her breach of contract claim against the VA is reviewable in this court. Therefore, this action must be dismissed for lack of jurisdiction.

Accordingly, it is respectfully **RECOMMENDED**:

That this cause be **DISMISSED** for lack of subject matter jurisdiction.

At Pensacola, Florida, this 15th day of May 2013.

/s/ *Elizabeth M. Timothy*
**ELIZABETH TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**